UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MICHAEL STURDEVANT; SOKE SAING; GAYLE STAMMER; and THEO DOOLEY

Plaintiffs,

v.

24 HOUR FITNESS USA, INC., a California corporation,

Defendant.

Case No. 3:16-cv-2119-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs Michael Sturdevant and others (collectively, "Plaintiffs") filed this action against defendant 24 Hour Fitness USA, Inc. ("24 Hour Fitness" or "Defendant") in the Circuit Court for the State of Oregon, for the County of Multnomah. Plaintiffs allege 24 Hour Fitness increased the annual renewal fee on their "lifetime" gym memberships after representing that the annual renewal

fee would never increase. Based on this alleged conduct, Plaintiffs assert a claim under the Oregon Unlawful Trade Practices Act ("UTPA"), ORS 646.605–656.656. On November 4, 2016, 24 Hour filed a timely notice of removal to this court (ECF No. 1), asserting federal subject matter jurisdiction based on diversity of citizenship. Now before the court is Plaintiffs' motion to remand (ECF No. 4.) Plaintiffs argue the amount in controversy in this case is insufficient to support diversity jurisdiction. Additionally, Plaintiffs move for attorney fees incurred due to removal, contending 24 Hour Fitness lacked an objectively reasonable basis for removing this action. For the reasons explained below, the court grants Plaintiffs' motion and remands this case to state court.

*Background*

Plaintiffs purchased "lifetime" gym memberships from 24 Hour Fitness. (Compl., ECF No. 2 Ex. D, ¶2.) "Lifetime" memberships involved a prepaid membership for a number of years, with annual renewals thereafter for a fee. (Compl. ¶3.) Defendant's sales representatives allegedly represented that the "lifetime" membership entitled purchasers to a fixed annual renewal fee. (*Id.*) Defendant raised the annual fee in January 2016. (Compl. ¶4.) Plaintiffs brought this case alleging violations of the UTPA through misrepresentation of the amount of the annual fee. (Compl. ¶¶6–7.) The state-court complaint seeks $2,500 for each of four plaintiffs — for a total of $10,000 in compensatory damages — and injunctive relief barring future modification of the annual fee at issue. (Compl. at 3.) In seeking remand, Plaintiffs claim a much lower potential recovery in their motion, between $100 and $200 per plaintiff. (Pls. Mot. to Remand, ECF No. 9, at 4.) The complaint also seeks attorney fees under the UTPA and expresses intent to seek punitive damages. (Compl. at 3.)

*Standard*

Following removal, a plaintiff may move to remand to state court, based on defects in

removal or a lack of subject-matter jurisdiction. 28 U.S.C. § 1447(c); *Lively v. Wild Oats Market, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). The party opposing remand bears the burden of establishing the propriety of removal. *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1041 (9th Cir. 2009) (citation omitted). Courts construe the removal statute strictly against the party seeking removal. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) (citation omitted). Courts also resolve any ambiguity regarding removal jurisdiction in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

*Analysis*

Plaintiffs move to remand this action to state court based on a lack of subject-matter jurisdiction. Defendant asserts diversity of citizenship as the basis for subject-matter jurisdiction. An amount in controversy exceeding $75,000 is a prerequisite for diversity jurisdiction. 28 U.S.C. § 1332(a). Subject-matter jurisidiction over a case removed from state court depends on the circumstances at the time of removal. *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006). In removed cases where the amount in controversy is unclear from the face of the complaint, the removing defendant must establish the amount in controversy by a preponderance of the evidence. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Where multiple plaintiffs bring separate and distinct claims, the "anti-aggregation rule" requires courts to determine the amount in controversy by analyzing the value of individual claims for relief without aggregation. *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013).

<u>I. The Anti-Aggregation Rule</u>.

This case involves four plaintiffs pursuing similar UTPA claims against the same defendant. All of the forms of relief at issue in this case — compensatory damages, equitable relief, attorney

fees, and punitive damages — are subject to the anti-aggregation rule. *In re Ford*, 264 F.3d at 960–61 (equitable relief); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 944, 946 (9th Cir. 2001) (compensatory and punitive damages); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney fees). Accordingly, the anti-aggregation rule is important to determining whether diversity jurisdiction exists over this case. Aggregation of multiple-plaintiff claims is possible only when the plaintiffs assert "common and undivided" claims held as a group. *Id.* (quoting *Gibson*, 261 F.3d at 944). A claim is "common and undivided" when the plaintiffs cannot bring their claims without involving one another. *Id.* Here, Plaintiffs could have brought their individual UTPA claims against 24 Hour Fitness separately. *See* OR. REV. STAT. § 646.638 (authorizing individual actions for individuals damaged by unlawful trade practices). Defendant therefore cannot aggregate Plaintiffs' UTPA claims, and must show an unaggregated amount in controversy exceeding $75,000 to establish diversity jurisdiction over this case.

II. The Amount in Controversy.

The complaint seeks $2,500 per plaintiff in compensatory damages. Plaintiffs also seek other forms of relief, which are unquantified. The unquantified relief in the complaint falls into three categories: equitable relief, attorney fees, and potential punitive damages. For subject-matter jurisdiction over this case, Plaintiffs' unquantified claims for relief must put $72,500 in controversy, without aggregating multiple plaintiffs' claims. Because the amount in controversy is unclear from the face of the complaint, 24 Hour Fitness's evidentiary burden is to show by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Sanchez*, 102 F.3d at 404. In its opposition to Plaintiffs' motion, 24 Hour Fitness argues the unquantified relief Plaintiffs seek satisfies the jurisdictional amount-in-controversy requirement.

The amount in controversy depends on the value of the unaggregated individual claims, both for monetary damages and equitable relief. *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958–59 (9th Cir. 2001). Potential punitive damages are also part of the amount in controversy. *Gibson*, 261 F.3d at 946. Where a statute authorizes an award of attorney fees, the fees are part of the amount in controversy. *Galt G/S v. JSS Scaninavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998). The Ninth Circuit has not decided whether prospective, unaccrued attorney fees are part of the amount in controversy when a case is removed. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 n.2 (9th Cir. 2016) ("It remains an open question whether attorney's fees that are anticipated but unaccrued at the time of removal or filing in federal court . . . may be included in the amount-in-controversy. Other circuits and the district courts in this circuit are divided on the issue.").

In its notice of removal, 24 Hour Fitness identified attorney fees and punitive damages as sufficient to satisfy the amount-in-controversy requirement. (Notice of Removal, ECF No. 1, ¶ 8.) Plaintiffs contend unaccrued attorney fees are not part of the amount in controversy. Additionally, Plaintiffs argue the amount of potential punitive damages cannot exceed a 4:1 ratio with compensatory damages. The court finds unaccrued attorney fees are not part of the amount in controversy. While a punitive damages award satisfying the amount-in-controversy requirement is legally possible, 24 Hour Fitness fails to make an evidentiary showing that such an award is more likely than not. Accordingly, 24 Hour Fitness cannot establish subject-matter jurisdiction.

*A. Attorney Fees.*

Plaintiffs request attorney fees, as authorized by the UTPA. OR. REV. STAT. § 646.638(3). Defendant argues the potential fee award satisfies the amount-in-controversy requirement. The

threshold issue is whether the court may consider unaccrued attorney fees as part of the amount in controversy. *See Gonzales*, 840 F.3d at 649 n.2 (noting the issue "remains an open question" in the Ninth Circuit). Where a statute authorizes a fee award, attorney fees may be part of the amount in controversy. *Galt*, 142 F.3d at 1155–56. In *Galt*, a party sought attorney fees already accrued defending an indemnity claim. *Id.* While Plaintiffs have accrued some attorney fees in this action, 24 Hour Fitness relies on the potential for a total fee award after trial. (Notice of Removal ¶ 9.) There is conflicting authority on the issue, including within this district. *Compare Beaver v. NPC Int'l, Inc.*, 451 F. Supp. 2d. 1196, 1200 (D. Or. 2006) (considering unaccrued attorney fees), *with Reames v. AB Car Rental Servs., Inc.*, 899 F. Supp. 2d 1012, 1015 (D. Or. 2012) (considering only fees accrued at the time of removal or filing).

At oral argument, 24 Hour Fitness's counsel argued the court's previous decision in *Perez v. Del Monte Fresh Produce N.A., Inc.*, No. CV 10-675-AC, 2011 WL 3664595 (D. Or. May 12, 2011), supported consideration of unaccrued attorney fees in removal cases. In *Perez*, the parties agreed that unaccrued attorney fees were part of the amount in controversy. *Id.* at *5–9. Thus, the court never reached the threshold issue presented here: whether unaccrued attorney fees are part of the amount in controversy at the time of removal or filing. *Reames* and *Beaver* analyze this issue, and are more useful to deciding the parties' dispute here. A close reading of both cases is therefore necessary.

In *Reames*, Judges Papak and Marsh[1] limited consideration of attorney fees to fees accrued at the time of removal. 899 F. Supp. at 1015–16, 1020–21. *Reames* turned on two concepts. First,

[1] The opinion in *Reames* consists of both Judge Papak's Findings and Recommentation and Judge Marsh's opinion adopting Judge Papak's analysis.

under *Abrego v. Dow Chemical Co.*, 443 F.3d at 690, the court must consider the amount in controversy at the time of removal. *Reames*, 899 F. Supp. 2d at 1019. *Reames* also relied on a Seventh Circuit opinion, *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998), which analyzed whether unaccrued attorney fees are in controversy when a case is filed or removed. *Reames*, 899 F. Supp. 2d at 1019. In *Gardynski-Leschuck*, the court found determinative the distinction "between the likely course of the litigation and the legal rights of the parties". 142 F.3d at 958. The legal right to recovery has a fixed value at the time of filing or removal: the amount necessary "to resolve the case on the date it was filed." *Id.* at 959. Unaccrued legal fees are avoidable and depend on the course of the litigation. *Id.* at 958. Judge Papak thus concluded any estimation of attorney fees over the life of the case is unduly speculative and beyond the amount actually in controversy at the time of removal. 899 F. Supp. 2d at 1020–21. Second, Judge Papak noted that the substantial variability of costs and outcomes in civil litigation means any estimation of attorney fees, "no matter how exquisitely crafted, will inevitably and systematically produce dramatically inaccurate predictions a significant proportion of the time."

In *Beaver*, Judge King considered estimations of potential attorney fees as part of the amount in controversy. 451 F. Supp. 2d at 1198–99. Judge King found precedent for looking to analogous attorney fee awards in cases determining the value of unquantified requests for compensatory damages. *Id.* (citing *Harding v. U.S. Figure Skating Ass'n*, 851 F. Supp. 1476, 1480–81 (D. Or. 1994)). The *Beaver* defendant offered evidence of the fee awards in cases with similar claims, including one involving the same lawyer who represented the plaintiff in *Beaver*. *Id.* at 1199–200. Defendant also argues *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007), represents tacit approval by the Ninth Circuit of considering unaccrued attorney fees. While the district court

in *Guglielmino* considered unaccrued attorney fees, the Ninth Circuit's opinion addressed the evidentiary standard for proving the amount in controversy. *Id.* at 698, 701. *Guglielmino* mentioned attorney fees only in passing, and thus is not instructive as to whether unaccrued attorney fees should be considered to determine the amount in controversy.

The court concludes unaccrued attorney fees are not part of the amount in controversy. The amount in controversy depends on the circumstances at the time of removal or filing. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *see also Abrego*, 443 F.3d at 690. At the time of removal or filing, future attorney fees remain speculative and avoidable. *Reames*, 899 F. Supp. 2d at 1020–21. Unaccrued attorney fees are therefore not in controversy for purposes of the diversity jurisdiction statute. Considering only accrued attorney fees is also consistent with the policies of construing the removal statute against jurisdiction and resolving any doubts about jurisdiction against removal. *See Marinduque*, 582 F.3d at 1087; *Gaus*, 980 F.2d at 566. Including unaccrued attorney fees in the amount in controversy is inherently speculative, and would improperly expand removal jurisdiction.

Thus, 24 Hour Fitness must establish the amount of accrued attorney fees at the time of removal to show the amount in controversy. Defendant does not submit any evidence regarding the amount of attorney fees accrued prior to removal. (Decl. of Robert B. Miller ISO Def.'s Opp'n to Mot. to Remand, ECF No. 12, Exs. 1–2 (evidence of potential awards after trial), 3 (evidence of attorney fees increasing after removal).) Accordingly, 24 Hour Fitness fails to show any specific quantity of attorney fees were in controversy at the time of removal.

*B. Punitive Damages.*

The complaint does not contain an express claim for punitive damages — in Oregon state

courts, a complaint cannot contain a claim for punitive damages when filed. *See* OR. REV. STAT. § 31.725 (barring claims for punitive damages in complaints when filed and establishing procedure for amending complaint to allege punitive damages). Potential claims for punitive damages are still part of the amount in controversy, even when not included in the complaint. *Gibson*, 261 F.3d at 946. Because the complaint does not seek a specific amount of punitive damages, 24 Hour bears the evidentiary burden of establishing the amount of a likely award by the preponderance of the evidence. *Sanchez*, 102 F.3d at 404; *see also Culpepper v. Wells Fargo Bank, N.A.*, No. 6:12-cv-969-TC, 2012 WL 3779038, at *1–2 (D. Or. Aug. 8, 2012) (analyzing an Oregon state-court complaint containing a statement of intent to seek punitive damages in an amended complaint).

Plaintiffs argue punitive damages cannot exceed a 4:1 ratio with compensatory damages. *See Wieber v. FedEx Ground Package Sys., Inc.*, 231 Or. App. 469, 490 (2009) ("For cases in which the injuries giving rise to a punitive damages award are purely economic, the federal constitution prohibits most punitive damages awards that significantly exceed four times the amount of the injured party's compensatory damages."). But while a 4:1 ratio between punitive damages and compensatory damages may be a guideline for assessing due process limitations on punitive damages awards, no such mathematically precise limitation exists. *BMW v. Gore*, 517 U.S. 559, 582 (1996) ("[w]e cannot draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case"). A punitive damages award exceeding a 4:1 ratio would not necessarily exceed due-process limitations.

Defendant's burden is to show a punitive damages award sufficient to meet the jurisdictional threshold is "more likely than not," not merely of showing the "legal possibility" of a sufficient punitive damages award. *Sanchez*, 102 F.3d at 403 (rejecting a test requiring "only a legal possibility

that the amount in controversy exceeded" the jurisdictional minimum and adopting a preponderance of the evidence test). Thus, 24 Hour Fitness must show a potential punitive damages award in this case is more likely than not to exceed $72,500 per plaintiff.

Relying on *Culpepper*, 24 Hour Fitness argues it has carried its evidentiary burden. 2012 WL 3779038. While *Culpepper* is instructive as to how to establish a potential punitive damages award, the facts of *Culpepper* are distinguishable. *Culpepper* was procedurally similar to this case — a defendant removed an Oregon state-court case to District Court. *Id.* at *1. The state-court complaint did not contain an express claim for punitive damages, but only stated plaintiffs' intent to seek leave to amend, to add a claim for $1 million in punitive damages. *Id.* at *2. Counsel for the plaintiff in *Culpepper* represented at oral argument that he would seek to add the $1 million punitive-damages claim if the court ordered remand to state court. *Id.* The defendant also summarized "several" factually analogous cases where punitive damages awards exceeded $75,000. *Id.* Taken together, the complaint and available evidence in *Culpepper* showed a potential punitive-damages award exceeding $75,000. *Id.*

In contrast, the complaint and available evidence in this case are insufficient to show any likely value of a punitive-damages claim. Plaintiffs in this case do not identify a specific amount of punitive damages to be sought in an amended complaint. At oral argument, Plaintiffs' counsel represented that the amount of a punitive damages claim, if any, depends on information he will seek in discovery. To establish the amount of potential punitive damages, 24 Hour Fitness relies on reported cases arising under the UTPA and another consumer-protection statute where Oregon appellate courts upheld the awards of punitive damages sufficient to satisfy the jurisdictional threshold based on compensatory damages similar to those alleged here. *Parott v. Carr Chevrolet,*

*Inc.*, 331 Or. 537, 564–65 (2001) (upholding a $1 million punitive damages award in a UTPA case with $11,496 in economic damages); *Lithia Medford LM, Inc. v. Yovan*, 254 Or. App. 307, 328–29 (2012) (en banc) (upholding a $100,000 punitive damages award in an Oregon Unlawful Debt Collection Practices case with $500 in noneconomic damages). The court in *Culpepper* used factually analogous cases to establish the amount-in-controversy from potential punitive damages. 2012 WL 3779038, at *2 (in a case involving harassing phone calls, looking to telephonic harassment cases). Thus, the court must determine whether *Parrott* and *Lithia* are sufficiently analogous to this case to provide evidence of the amount of potential punitive damages. *Id.*

*Parrott* and *Lithia Medford* are factually similar to one another, but dissimilar to this case. In *Parrott*, a used-car dealer misrepresented the condition of a used car prior to sale, and "used abusive tactics to cover its deceptions." 331 Or. at 560 (citation omitted). In upholding the punitive-damages award, the court held the dealer "committed 'an extraordinarily egregious violation' of the UTPA." *Id.* In *Lithia*, a used-car dealer sold a car with an altered odometer, misrepresenting the mileage of the car. 254 Or. App. at 310. After the purchaser discovered the true mileage of the car, the dealer attempted to repossess the car and threatened the purchaser with arrest. *Id.* The court upheld a punitive-damages award against the dealer, finding the dealer's "conduct was egregious . . . given proof that [the dealer] repeatedly used deceptive and abusive tactics against a financially vulnerable consumer." *Id.* at 326. Both cases involved egregious violations of Oregon's consumer protection statutes in relation to selling used cars, with dealers using abusive tactics to conceal their misconduct. *Parrott*, 331 Or. at 560; *Lithia Medford*, 254 Or. App. at 326.

In contrast, Plaintiffs' complaint alleges willful misrepresentation of a future price increase for a gym membership. (Compl. ¶¶ 2, 6.) The subject matter and conduct at issue in *Parrott* and

*Lithia Medford* have minimal similarity to this case. Accordingly, neither case is useful in showing the amount of potential punitive damages. The party seeking removal based on diversity jurisdiction bears the evidentiary burden of demonstrating a sufficient amount in controversy, *Sanchez*, 102 F.3d at 403, and 24 Hour Fitness has not carried its burden. The court therefore lacks jurisdiction over this case; remand is required.

III. Attorney Fees under 28 U.S.C. § 1447(c).

Plaintiffs ask the court to award attorney fees incurred in contesting removal of this action, under 28 U.S.C. § 1447(c). Plaintiffs argue 24 Hour Fitness lacked an objectively reasonable basis for removing this action. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Removal is not objectively unreasonable merely because the court orders remand. *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, courts assess whether "the relevant case law clearly foreclosed the defendant's basis for removal." *Id.* at 1066–67.

Here, 24 Hour Fitness had an objectively reasonable basis for removal. The propriety of considering unaccrued attorney's fees is an open question within this circuit. *Gonzales*, 840 F.3d at 649 n.2; *Reames*, 899 F. Supp. 2d at 1015; *Beaver*, 451 F. Supp. 2d. at 1200. Further, 24 Hour Fitness' arguments regarding potential punitive damages relied on controlling precedent, failing on evidentiary rather than legal grounds. *See Gibson*, 261 F.3d at 946. Defendant relied on objectively reasonable legal arguments because case law did not "clearly foreclose[]" either line of argument. *Lussier*, 518 F.3d at 1066. Accordingly, the court denies Plaintiffs' request for attorney fees.

*Conclusion*

The court GRANTS Plaintiffs' Motion to Remand to State Court (ECF No. 4). This case shall be remanded to the Circuit Court of the State of Oregon for the County of Multnomah. The court DENIES Plaintiffs' request for attorney fees. Defendant's Motion to Dismiss (ECF No. 5) is DENIED as moot.

IT IS SO ORDERED.

DATED this 23rd day of January, 2017.

JOHN V. ACOSTA
United States Magistrate Judge